743 A.2d 872 (2000)
327 N.J.Super. 428
Irwin SCHECHTER, Plaintiff-Appellant,
v.
NEW JERSEY DEPARTMENT OF LAW & PUBLIC SAFETY, DIVISION OF GAMING ENFORCEMENT, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1999.
Decided January 21, 2000.
*873 Stephen E. Klausner, Somerville, for plaintiff-appellant (Klausner, Hunter & Rosenberg, attorneys; Mr. Klausner, of counsel and on the brief).
Barbara Berreski, Deputy Attorney General, for defendant-respondent (John J. Farmer, Jr., Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Berreski, on the brief).
Before Judges SKILLMAN, D'ANNUNZIO and NEWMAN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Plaintiff was employed by the Division of Gaming Enforcement (Division) as Supervising Agent of the Special Investigation Unit. This unit investigates persons who may be subject to exclusion from casinos because of criminal activity or because their presence in a casino would be inimical to the public interest. Upon completion of an investigation, the unit makes recommendations to the Division's legal staff concerning the filing of a petition with the Casino Control Commission (Commission), which may result in a person's name being placed on the exclusion list.
On July 12, 1993, plaintiff was suspended for a period of thirty days and demoted to the position of State Investigator I. The basis for this personnel action was that plaintiff allegedly made threatening comments to the Division's Deputy Director and its Chief Administrator of Investigations after agents under his supervision were transferred to other units within the agency. Although plaintiff's position was unclassified, he was afforded an opportunity for an administrative hearing to contest this disciplinary action. However, plaintiff declined to avail himself of this opportunity and never returned to work. Instead, after running out of vacation and sick leave, he applied for an accidental disability pension. On September 27, 1994, the Board of Trustees of the Public Employees Retirement System denied plaintiff's application but granted him an ordinary disability pension.
Shortly after filing his application for a disability pension, plaintiff brought the present action against the Division, claiming that he had been constructively discharged, in violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. Plaintiff alleged that the Division had suspended and demoted him in retaliation for his objections to both the Division's failure to act on some of his recommendations for placement of persons on the casino exclusion list and the transfer of agents out of his unit.
After completion of discovery, the Division moved for summary judgment. The trial court granted the motion, concluding that plaintiff had failed to identify any statute, regulation or other clear mandate of public policy that the Division could be found to have violated. The court also concluded that the record did not contain any evidence from which a trier of fact could reasonably find a "causal nexus" between plaintiff's objections to the Division's policies and his subsequent suspension and demotion.
*874 Plaintiff appeals. We conclude that the trial court properly granted summary judgment and therefore affirm the dismissal of plaintiff's complaint.
Plaintiff's CEPA claim is based on N.J.S.A. 34:19-3a, c(1) and c(3), which provide that:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law...; [or]....
c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law...; [or]....
(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare.
The threshold question in a CEPA case brought under these sections is whether plaintiff has identified either "a law, or a rule or regulation promulgated pursuant to law" N.J.S.A. 34:19-3a, 3c(1), or "a clear mandate of public policy concerning the public health, safety or welfare," N.J.S.A. 34:19-3c(3), which the employer has allegedly violated. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187-88, 707 A.2d 1000 (1998); MacDougall v. Weichert, 144 N.J. 380, 391-92, 677 A.2d 162 (1996); Regan v. City of New Brunswick, 305 N.J.Super. 342, 352-53, 702 A.2d 523 (App.Div.1997). Therefore, to determine whether a plaintiff has presented a viable CEPA claim, a trial court "must first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true." Fineman v. New Jersey Dep't of Human Servs., 272 N.J.Super. 606, 620, 640 A.2d 1161 (App.Div.), certif. denied, 138 N.J. 267, 649 A.2d 1287 (1994). The determination whether a plaintiff has made this threshold showing is a question of law which the court must decide before submitting a CEPA claim to a jury. Mehlman, supra, 153 N.J. at 187, 707 A.2d 1000.
The trial court correctly concluded that plaintiff failed to make this showing. Plaintiff's claim, as summarized in his appellate brief, is that "the failure of the [Division] to pursue exclusion cases and other investigations was a violation of law or rule or regulation promulgated pursuant to law." However, even under plaintiff's version of the relevant facts, this case involves nothing more than a policy dispute between the Division's middle and upper level management concerning the priority to be assigned to exclusion cases.
The Legislature has conferred authority upon the Casino Control Commission to maintain a list of persons who must be excluded from casinos, which is commonly referred to as the exclusion list. N.J.S.A. 5:12-71a provides:
The commission shall, by regulation, provide for the establishment of a list of persons who are to be excluded or ejected from any licensed casino establishment. Such provisions shall define the standards for exclusion, and shall include standards relating to persons:
(1) Who are career or professional offenders as defined by regulations of the commission;
(2) Who have been convicted of a criminal offense under the laws of any state or of the United States, which is punishable by more than six months in prison, or any crime or offense involving moral turpitude; or
(3) Whose presence in a licensed casino hotel would, in the opinion of the commission, be inimical to the interest of the State of New Jersey or of licensed gaming therein, or both.

*875 The commission shall promulgate definitions establishing those categories of persons who shall be excluded pursuant to this section, including cheats and persons whose privileges for licensure or registration have been revoked.
In addition, the Legislature has conferred authority upon the Division of Gaming Enforcement to investigate persons who may be subject to exclusion and to petition the Commission to place the name of such a person on the exclusion list. N.J.S.A. 5:12-71e to i. A person who the Division petitions the Commission to exclude may demand a hearing at which the Division has "the affirmative obligation to demonstrate by a preponderance of the evidence that the person named for exclusion or ejection satisfies the criteria for exclusion established by this section and the commission's regulations." N.J.S.A. 5:12-71f; see State of N.J., Dept. of Law & Public Safety, Div. of Gaming Enforcement v. Merlino, 216 N.J.Super. 579, 585-87, 524 A.2d 821 (App.Div.1987), aff'd o.b., 109 N.J. 134, 535 A.2d 968 (1988).
Pursuant to N.J.S.A. 5:12-71a, the Commission has adopted regulations pertaining to the identification of persons subject to exclusion from casinos. N.J.A.C. 19:48-1.1 to -1.8. A section of these regulations, entitled "Duties of the Division of Gaming Enforcement," provides that "[t]he Division shall, on its own initiative, or upon referral by the Commission, investigate any individual who would appear to be an appropriate candidate for placement on the exclusion list." N.J.A.C. 19:48-1.4(a). While this regulation imposes a duty upon the Division to investigate, it also confers discretion upon the Division to determine whether an individual "should be placed on the exclusion list." N.J.A.C. 19:48-1.4(b)
Although N.J.S.A. 5:12-71a imposes an obligation upon the Commission to establish and maintain a casino exclusion list, the statute and regulations adopted thereunder clearly indicate that both the Commission and the Division have broad discretion to determine the priority to be assigned to the performance of this responsibility. Neither the statute nor the regulations prescribe how aggressively the Division must pursue the identification of persons who may qualify for placement on the exclusion list, or the size of the staff that must be assigned to investigate and prosecute exclusion cases. Instead, these determinations are left to the agency's discretion, which must be exercised in light of the competing demands of the Division's other investigatory responsibilities.
The specific decisions regarding the exclusion list to which plaintiff allegedly objected provide no basis for a finding that the Division violated N.J.S.A. 5:12-71 or the implementing regulations. For example, plaintiff allegedly protested the Division's refusal to place a suspected bookmaker named Harvey Berke on the list. However, the Deputy Attorney General assigned to prosecute exclusion cases declined to recommend filing a petition to list Berke because he was in jail and consequently unable to patronize the casinos. Plaintiff also recommended that the Division petition the Commission to exclude "an organized crime capo out of north Jersey," but the Deputy Attorney General rejected this recommendation because of the lack of supporting evidence. These decisions were clearly within the Division's broad discretionary authority to determine whether the grounds supporting a potential exclusion case are sufficiently compelling to warrant the expenditure of resources involved in presenting the matter to the Commission. In fact, plaintiff himself recognized the highly discretionary nature of the Division's role regarding the exclusion list when he joined in a staff recommendation to stop pursuing exclusion cases against persons who commit acts of petty theft inside casinos. Therefore, the Division's decision to assign a lower degree of priority to exclusion cases than in prior years did not violate any "law, rule or regulation" or "clear mandate of public policy," as required to maintain a cause of action under CEPA, N.J.S.A. *876 34:19-3. See Young v. Schering Corp., 275 N.J.Super. 221, 237, 645 A.2d 1238 (App. Div.1994) (CEPA "was not intended to provide a remedy for wrongful discharge for employees who simply disagree with an employer's decision, where that decision is entirely lawful."), aff'd, 141 N.J. 16, 660 A.2d 1153 (1995).
Plaintiff argues that even if the Division's refusal to approve his recommendations concerning exclusion cases did not violate a specific statute, rule or regulation, its policy determination to assign lower priority to such cases was contrary to former Governor Byrne's assurance that "[w]e will keep organized crime out of Atlantic City." However, as a government agency, the Division is subject to the specific provisions of the statute and implementing regulations that prescribe its regulatory powers and responsibilities, rather than to general pronouncements of public policy. Moreover, the Division could reasonably have concluded that the maintenance of the exclusion list plays a less important role in preserving the integrity of the gaming industry than many of its other regulatory responsibilities, such as investigations relating to the licensing and regulation of casino operators and employees. See In re Hotel & Restaurant Employees & Bartenders Int'l Union Local 54, 203 N.J.Super. 297, 317, 496 A.2d 1111 (App.Div.) (noting that "[o]f paramount concern to the Legislature [in enacting the Casino Control Act] was the exclusion from participation in the gaming industry of all persons with known criminal records, habits or associations."), certif. denied, 102 N.J. 352, 508 A.2d 223 (1985), cert. denied, 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986); see also State of N.J., Dept. of Law & Public Safety, Div. of Gaming Enforcement v. Gonzalez, 142 N.J. 618, 628, 667 A.2d 684 (1995); In re Petition of Nigris, 242 N.J.Super. 623, 628, 577 A.2d 1292 (App.Div. 1990).
Because the trial court correctly concluded that plaintiff failed to satisfy the threshold requirement of a CEPA claim the identification of a statute, rule or regulation or other clear expression of public policy that would be violated if the facts he alleged could be proventhere is no need to consider the court's alternative holding that plaintiff failed to present evidence that would support a finding that he was suspended and demoted because of his objections to the Division's policies concerning the investigation of exclusion cases. Finally, because plaintiff failed to present a prima facie case of a CEPA violation, there is no foundation for plaintiff's claim that his suspension and demotion constituted an unlawful constructive discharge. See Gallo v. Princeton Univ., 281 N.J.Super. 134, 149-50, 656 A.2d 1267 (App.Div.), certif. denied, 142 N.J. 453, 663 A.2d 1359 (1995).
Affirmed.