Amy MAZZA, Plaintiff,

v.

GEORGE YELLAND, INC., Defendant.

No. CIV. A. 99–02517.

United States District Court,
D. New Jersey.

Sept. 5, 2001.

James Katz, Sagot, Jennings & Sigmond, Cherry Hill, NJ, for Plaintiff, Amy Mazza.

William M. Tambussi, Susan M. Leming, Brown & Connery, LLP, Westmont, NJ, for Defendant, George Yelland, Inc.

## OPINION

ORLOFSKY, District Judge:

## I. INTRODUCTION

In this variant on the traditional whistle-blower case, a former corporate bookkeeper alleges that she was terminated for refusing to aid in what she perceived to be an illegal scheme to reduce the employer corporation's federal income tax. Not surprisingly, the employer disagrees, asserting that Plaintiff's claim is barred under the controlling New Jersey law either because there was never, in fact, any illegal act, or, that the possibility of any unlawful activity was so remote that the Plaintiff could not reasonably have believed it would happen. Accordingly, Defendant, George Yelland, Inc., has moved for summary judgment, pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, I shall DENY defendant's motion.

## II. FACTS AND PROCEDURAL HISTORY

Between June, 1987, and June, 1998, the Plaintiff, Amy Mazza ("Mazza"), was employed, to the evident satisfaction of her employer, by Defendant, George Yelland, Inc ("GYI"). Mazza Depo. at 5, 46; Yelland Depo. at 68–69. During this period Mazza served as controller and secretary-treasurer to GYI; in other words, she kept its books. Mazza Depo. at 74; Yelland Depo. at 34, 36, 58. As part of this duty, Mazza produced a monthly balance sheet reflecting GYI's current profits and outstanding debts. Yelland Depo. at 36. Mazza did not herself prepare GYI's tax returns; that task was given, during the period in question, to an outside accountant, Gary Addis. Yelland Depo. at 35–40. According to Addis, he prepared the firm's return based on both the monthly balance sheets and a year-end summary, also produced by Mazza. Addis Depo. at 29–31.

GYI is operated by one of its principal stockholders, George Yelland ("Yelland"). On June 9, 1998, Yelland entered into two separate loan agreements, totaling $1,400,000, with the Sun National Bank. Compl. Exh. E. According to Mazza, the larger loan, amounting to about $1,200,000, was intended for the personal use of Yelland and his wife, while the remaining $200,000 was for GYI. Pl.'s Br. at 12; Yelland Depo. at 149–53. Mazza alleges that Yelland nonetheless directed that all of the transaction fees for both loans be listed on the GYI books. Pl.'s Br. at 11; Mazza Depo. at 88–89. There appears to be no allegation that GYI itself actually paid the fees on Yelland's behalf; however, there were possible federal income tax benefits in allocating the expense to GYI.

Mazza refused to list the full fee in GYI's books. She alleges that on June 15, 1998, Yelland offered her the choice of listing the fee or resigning. Pl.'s Br. at 14; Mazza Depo. at 147. She resigned. Mazza Depo. at 144.

On June 1, 1999, Mazza filed a complaint in this court seeking damages and injunctive relief pursuant to the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19 (West 2000) ("CEPA").[1] As the parties are completely

---

1. In particular, Mazza alleges that she was discharged contrary to N.J. Stat. Ann. § 34:19–3c, which provides that:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

. . . . .

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

diverse, this Court has jurisdiction under 28 U.S.C. § 1332 (1994).

## III. SUMMARY JUDGMENT STANDARD

■ "On a motion for summary judgment, the court must determine whether the evidence shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Abraham v. Raso,* 183 F.3d 279, 287 (3d Cir.1999) (citing Fed.R.Civ.P. 56(c)). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Abraham,* 183 F.3d at 287. "Thus, while the nonmoving party must present enough evidence to demonstrate a dispute is genuine, all inferences in interpreting the evidence presented by the parties should be drawn in favor of the nonmoving party." *Abraham,* 183 F.3d at 287 (citing *Boyle v. County of Allegheny Pa.,* 139 F.3d 386, 393 (3d Cir. 1998)). "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment." *Id.*

## IV. ANALYSIS

I construe GYI's argument that "plaintiff cannot identify any statute, regulation or clear mandate of public policy allegedly violated by defendant" as stating, in effect, three distinct grounds for summary judgment. *See* Def.'s Br. at 7. First, GYI appears to argue that it is the plaintiff's burden to plead or otherwise come forward with a specific statute or policy that would have been contravened by the activity the plaintiff refused to participate in. Assuming *arguendo* that such a burden is proper under New Jersey law, Mazza has clearly met it. *See* Pl.'s Br. at 28–31 (pointing to federal and state statutes and regulations that could have been violated by the alleged conduct).

■ More substantially, GYI argues that a prima facie CEPA claim requires the plaintiff to show an actual violation of law or policy. Since the loan fees ultimately did not appear in GYI's books, and the fees were not claimed as a deduction on GYI's income tax return, Defendant asserts that Mazza's claim must fail as a matter of law.

■ New Jersey law is clearly contrary to GYI's position. "With regard to section 3c(1), CEPA does not require that the activity complained of ... be an actual violation of a law or regulation, only that the employee 'reasonably believes' that to be the case." *Estate of Roach v. TRW, Inc.,* 164 N.J. 598, 613, 754 A.2d 544, 551 (2000). GYI, however, cites an opinion by my estimable then–colleague, Judge Barry, in which she determined that New Jersey law requires a court to decide "[b]efore considering whether plaintiff has established his prima facie case ... whether there exists a clear expression of law, either in a statute or rule or in a regulation promulgated pursuant to a statute, that 'would be violated if the facts as alleged are true.'" *Blackburn v. United Parcel Service, Inc.,* 3 F.Supp.2d 504, 514 (D.N.J. 1998) (quoting *Fineman v. New Jersey Dep't of Human Servs.,* 272 N.J.Super. 606, 620, 640 A.2d 1161 (App.Div.1994)). GYI fails to mention, however, that the United States Court of Appeals for the Third Circuit observed in reviewing Judge

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

(2) is fraudulent or criminal; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

Barry's opinion that it had "some doubt as to the correctness of the District Court's conclusion on this point," and ultimately affirmed on different grounds. *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 93–94 & n. 4 (3d Cir.1999).

Indeed, Judge Barry herself expressed some doubt that her conclusion was a sensible reading of the CEPA, but found that she was constrained by existing state case law. *See Blackburn*, 3 F.Supp.2d at 514 n. 5. Her decision, of course, antedated the New Jersey Supreme Court's opinion in *Roach*. As a result, she appears to have relied on several decisions by the Appellate Division of the New Jersey Superior Court to predict how New Jersey law would treat this issue. *See id.* at 514. In my view, the Appellate Division cases she cited, particularly *Fineman*, do not survive *Roach.*[2]

■ To the extent that *Roach* did not abrogate *Fineman*, I still predict that the New Jersey Supreme Court will reject any "actual violation" requirement for successful claims under the CEPA. The purpose of CEPA is to "enact 'broad protections against employer retaliation' for employees who act in the public interest." *Higgins v. Pascack Valley Hosp.*, 158 N.J. 404, 420, 730 A.2d 327, 336 (1999) (quoting *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 179, 707 A.2d 1000 (1998)). GYI's position would deny protection to employees who, by refusing to comply with an illegal order,

entirely prevent the commission of a public wrong. I am certain that the New Jersey Supreme Court would not approve such an obviously absurd result. Nor would the Court likely allow an employee's protection to turn on the subsequent acts of others over whom she has no control. That would cloud the incentives of employees who refused to carry out some intermediate task in any assembly line, either literal or metaphorical, whose end product was illegal or contrary to public policy. *Cf. Higgins*, 158 N.J. at 421, 730 A.2d at 336 (noting that a legal requirement that illegal practices by co-workers be systemic before CEPA protection could apply would unduly chill the whistle-blowing activity of employees who know only of the illegal act, not the policies of the employer).[3]

■ This leaves me to consider whether or not a reasonable jury could find that Mazza "reasonably believe[d]" the actions asked of her would have been unlawful. *Roach*, 164 N.J. at 613, 754 A.2d at 551. More specifically, I must determine whether Mazza had "an objectively reasonable belief," at the time of her refusal, that "the employer's offensive activity" was illegal. *Mehlman*, 153 N.J. at 193, 707 A.2d at 1015. "Specific knowledge of the precise source of public policy is not required." *Id.*

Filing false or fraudulent federal income tax returns is a felony punishable by up to five years in prison. *See* 18 U.S.C. § 287

---

**2.** I note that Judge Barry also cited the Supreme Court of New Jersey's opinion in *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 707 A.2d 1000 (1998), although it is somewhat unclear from her citation whether she believed *Mehlman* requires an actual violation of law before CEPA protection attaches. *See Blackburn*, 3 F.Supp.2d at 514 & n. 5. I read the cited portion of the *Mehlman* opinion only to hold that the trial judge must decide whether an alleged public policy is too highly controversial or uncertain to be a basis for relief. *See Mehlman*, 153 N.J. at 185–87, 707 A.2d at 1012. Indeed, although the Court

notes that Mobil presented evidence that the violation Mehlman disclosed never actually occurred, that fact does not figure at all in the Court's legal analysis. *See id.* at 190, 707 A.2d at 1014.

**3.** For the same reasons, I believe that the Appellate Division's pre-*Roach* opinion in *Schechter v. New Jersey Dep't of L. & Pub. Safety*, 327 N.J.Super. 428, 432, 743 A.2d 872, 874 (2000) (citing *Fineman*, 272 N.J.Super. at 620, 640 A.2d 1161) does not accurately reflect the likely state of New Jersey law.

(1994). Crediting, as I must, Mazza's deposition testimony, she believed that GYI's accountant would use her monthly statements as the basis for the firm's tax return. *See* Mazza Depo. at 92. Thus, if a false income tax return had been filed using the information she provided, she might plausibly have been prosecuted under any one of several different theories—for example, under the "innocent agent" doctrine. *See* 18 U.S.C. § 2(b) (1994) ("Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."); *United States v. Catena*, 500 F.2d 1319, 1322–23 (3d Cir.), *cert. denied*, 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed.2d 641 (1974) (upholding conviction under § 287 where physician provided false medicare claim forms to private insurance carrier, which in turn submitted forms to government). While Mazza may not have actually known of the exact provisions that could have made her conduct illegal, she has come forward with evidence suggesting she was generally aware of the potential illegality. *See* Mazza Depo. at 94–95. Since the acts did, in fact, raise a serious possibility of criminal liability, I find that a jury could conclude that her belief was objectively reasonable.

Even if Mazza did not believe herself at risk, she could reasonably have believed that entering the loan fees on GYI's books would lead to a false return being filed. GYI suggests that Mazza's belief that a false return would be filed was only "speculation" about a possible future violation of the law. Def.'s Br. at 12. Yet a jury could easily infer that such was the purpose of Yelland's instructions, and GYI has not offered a more innocuous explanation. I must draw all reasonable inferences in the non-moving party's favor, and it is quite reasonable to infer that one's employer, having given the order to aid him in some task, will carry that task to completion once the employee's contribution is complete. Summary judgment is therefore not appropriate on this ground.

Accordingly, I need not consider the contention, made at length in several portions of Mazza's Reply Brief, that the various prongs of GYI's argument could also be met by pointing to the New Jersey State Board of Accountancy, Rules of Professional Conduct. Although codes of professional or corporate ethics have often served as the source of "public policy" under CEPA, *see, e.g., Mehlman*, 153 N.J. at 191–92, 707 A.2d at 1014–15, it appears to be an unresolved question whether accounting standards, in particular, represent public policy, especially as applied not to accountants themselves, but to in-house bookkeepers.

## V.  CONCLUSION

For the reasons set forth above, I shall deny the Defendant's motion. The Court will enter an appropriate form of order.