792 A.2d 494 (2002)
348 N.J. Super. 516
Susan GERARD and Desmond Gerard, husband and wife, Plaintiffs-Appellants,
v.
CAMDEN COUNTY HEALTH SERVICES CENTER, A Subdivision of Camden County; Anita Geis, Administrator of Long Term Care Nursing; Anthony Peters, Chief Executive Officer of Camden County Health Services Center; Richard Dodson, Director of Human Resources of Camden County Health Services Center; Thomas Lucarini, R.N.; Robert Hall, Director of Nursing, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 21, 2002.
Decided March 6, 2002.
*495 Alan H. Schorr, Marlton, argued the cause for appellants.
Joseph M. Weinberg, Haddonfield, argued the cause for respondents (Weinberg, McCormick, Chatzinoff & Zoll, attorneys; Barry Chatzinoff and Mr. Weinberg, on the brief).
Before Judges CONLEY, A.A. RODRIGUEZ and LEFELT.
The opinion of the court was delivered by CONLEY, J.A.D.
Plaintiff, former Assistant Director of Nurses at the Camden County Health Services Center (CCHSC), appeals a summary judgment in favor of CCHSC dismissing her suit brought pursuant to the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. The motion judge concluded the record was insufficient to establish that the activity she engaged in, to which CCHSC allegedly retaliated, was protected activity within the meaning of CEPA. We reverse.
At the outset, as the appeal arises within the context of a motion for summary judgment, we consider the motion record most favorably for plaintiff and draw all inferences therefrom which a reasonable fact-finder might draw. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995).[1] The impetus for the alleged retaliatory activity was plaintiff's refusal to accede to a request by CCHSC's hospital administrator, Anita Geis (Geis), to serve disciplinary charges upon head nurse Georgiana Young (Young) subjecting Young to a three-day suspension. The charges were based upon five alleged errors in a patient form called "Minimum Data Sets" (MDS).[2] Initially, Geis had directed another supervisor to serve the charges upon Young. That supervisor refused for reasons the record does not reflect.
Plaintiff, then, was directed to serve the charges. She first investigated them. Accepting her version of what occurred, as we must at this junction, she discovered that four of the five alleged errors did not involve Young and the fifth apparently involved a mistaken misdating that occurred during a training period on the MDS forms. Another supervisor had previously checked the form and had not noted the misdate as an error.
In addition to what plaintiff thought were substantially unsupported charges against Young, there was a history behind *496 them. There is a dispute as to when plaintiff learned this, but the motion record reflects that prior to what appeared to plaintiff to be trumped up charges, Young had issued a written warning to a certified nursing assistant for leaving his patients uncared for, naked and soiled. The certified nursing assistant was a friend of Geis and had left the patients to have a smoke with her. Shortly after issuing the warning, Young was told by another nurse to withdraw the warning or face disciplinary charges herself. Young refused and, thus, the Geis chargesat least that is the way the motion record can be construed.
The obvious take on this, viewed favorably for plaintiff, is that plaintiff refused to participate in retaliatory disciplinary action that was, she believed, based upon substantially unfounded allegations of MDS form errors against a nurse who had done no more than sought to protect the patients by disciplining a friend of Geis for leaving the patients unattended. So stated it seems hardly to be questioned that, if these beliefs are objectively reasonable, plaintiff was engaged in CEPA protected activity.[3]
CEPA is remedial legislation. It is designed to protect employees who reasonably believe, and take action consistent therewith, that their employers or coemployees are engaged in activity that either is illegal or constitutes improper patient care where the plaintiff employee is a licensed or certified health care professional, or is fraudulent or criminal, or is violative of some real, discernable public policy impacting upon the public health, safety, welfare, or environmental protection. N.J.S.A. 34:19-3c(1),(2),(3). The aim of the legislation is to encourage, not thwart, "legitimate employee complaints." Estate of Roach v. TRW, Inc., 164 N.J. 598, 610, 754 A.2d 544 (2000).
N.J.S.A. 34:19-3 provides in pertinent part:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
....

*497 c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;
(2) is fraudulent or criminal; or
(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.
One of the elements a plaintiff must establish in a CEPA action is whether he or she was engaged in "protected activity" under CEPA to which the alleged retaliatory conduct was directed. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187, 707 A.2d 1000 (1998). Some expressions in our prior opinions may be read to include a preliminary threshold burden of establishing facts which, if true, would constitute employer or coemployee conduct that is violative of a law, regulation, public policy, fraudulent, or criminal. In Fineman v. New Jersey Dep't of Human Servs., 272 N.J.Super. 606, 640 A.2d 1161 (App.Div.), certif. denied, 138 N.J. 267, 649 A.2d 1287 (1994), for instance, we said:
Where, as here, action is brought under N.J.S.A. 34:19-3c(1) and (3), the judge must first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true. When the judge has, as a matter of law, identified such a statute, regulation, or other clear source of expression of public policy, the matter may then go to the jury for determination of any disputed questions of fact, and for a finding as to whether there has been a retaliatory action against the at-will employee for either objecting to or refusing to participate in activity reasonably and objectively believed (1) to violate a statute or regulation or, (2) to be incompatible with a "clear mandate of public policy".
[Id. at 620, 640 A.2d 1161 (emphasis added).]
We have recently repeated this language. Smith-Bozarth v. Coalition Against Rape and Abuse, Inc., 329 N.J.Super. 238, 245, 747 A.2d 322 (App.Div.2000) ("Therefore, to determine whether a plaintiff has presented a viable CEPA claim, a trial court `must first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true.'" (quoting Fineman v. New Jersey Dep't of Human Servs., supra, 272 N.J.Super. at 620, 640 A.2d 1161) (emphasis added)); Schechter v. Dep't of Law, 327 N.J.Super. 428, 432, 743 A.2d 872 (App. Div.2000) (same). See also McLelland v. Moore, 343 N.J.Super. 589, 601-02, 606, 779 A.2d 463 (App.Div.2001), certif. denied, 171 N.J. 43, 791 A.2d 221 (2002).
It is, of course, the emphasized language "which would be violated if the facts as alleged are true" that causes the problem. This language has led at least one federal district court judge to conclude a New Jersey CEPA plaintiff must establish employer or coemployee conduct that is violative of a law, rule or regulation. Blackburn v. United Parcel Serv., Inc., 3 F.Supp.2d 504, 514 (D.N.J.1998) (New Jersey CEPA law requires a court to decide, before reaching the jury issue of a plaintiff's reasonable belief, whether a law, rule or regulation, "would be violated" if the facts asserted by plaintiff are true, a burden plaintiff failed to carry because plaintiff presented not even "a scintilla of evidence" to establish such a violation), questioned and aff'd. on other grounds, 179 F.3d 81 (3d Cir.1999).
*498 To the extent these expressions in our prior opinions impose a threshold obligation upon a CEPA plaintiff to establish that an employer or coemployee in fact violated a law or regulation or clear mandate of public policy or engaged in fraudulent or criminal conduct, separate and apart from the plaintiff's objective reasonable belief thereof, we disagree. Our Supreme Court has said "[w]ith regard to section 3c(1), CEPA does not require that the activity complained of ... be an actual violation of law or regulation, only that the employee `reasonably believes' that to be the case. The same holds true in respect of section 3c(2): the statute affords protection to employees if they reasonably believe that the activity complained of is `fraudulent or criminal' even when the activity does not rise to the level of an actual crime." Estate of Roach v. TRW, Inc., supra, 164 N.J. at 613, 754 A.2d 544 (citing Mehlman v. Mobil Oil Corp., supra, 153 N.J. at 193-94, 707 A.2d 1000). See Mazza v. George Yelland, Inc., 161 F.Supp.2d 376, 379-80 (D.N.J.2001). As the Court said in Mehlman v. Mobil Oil Corp., supra, 153 N.J. at 193-94, 707 A.2d 1000: "The object of CEPA is not to make lawyers out of conscientious employees but rather to prevent retaliation against those employees who object to ... conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety or welfare." To be sure, there must be some identifiable law, rule, public policy or fraudulent or criminal activity to which a plaintiff is "whistle blowing", but a CEPA plaintiff need not prove an actual violation thereof. Cf. Higgins v. Pascack Valley Hosp., 158 N.J. 404, 410, 730 A.2d 327 (1999) ("CEPA protects an employee who, with reasonable basis, complains to his or her employer about the misconduct of co-employees even in the absence of employer complicity in the misconduct." (Emphasis added)).
Here, then, in the context of the motion for summary judgment, whether the conduct to which plaintiff objected was, in fact, violative of a law, regulation, public policy, fraudulent or criminal, is not dispositive. What must be determined is whether a factfinder could reasonably conclude that CCHSC's conduct, to which the plaintiff was objecting, could objectively reasonably have been believed by plaintiff to be so violative and that that was what she was objecting to. See Hancock v. Borough of Oaklyn, 347 N.J.Super. 350, 357, 790 A.2d 186 (App.Div.2002) (although affirming summary judgment in favor of defendant on the basis of CEPA plaintiffs' failure to establish retaliatory conduct, we observed that in addition to the necessary element of causally related retaliatory conduct, a CEPA plaintiff's burden includes only that he or she "reasonably believed" the prohibited employer or coemployee conduct occurred, to which he or she objected.).
The motion judge saw the record as establishing, on the part of Geis, nothing more than a discretionary disciplinary determination, and, on the part of plaintiff, a disagreement over the exercise of that disciplinary discretion. Were that all the record could reasonably support, the motion would have been properly granted. Young v. Schering, 275 N.J.Super. 221, 237, 645 A.2d 1238 (App.Div.1994), aff'd on other grounds, 141 N.J. 16, 660 A.2d 1153 (1995).
But while plaintiff did assert her disagreement, from a management perspective, over the decision to discipline Young, she was clear that "it's more than that." She was not sure what "particular violation" of law, rules or public policy was involved, but she "just knew this was not right." She thought it might be a violation of Young's "Civil Service rights." She did not think what was being asked of her was *499 criminal but she did think she was being asked to participate in "fraudulent activity regarding the false accusations" against Young. Moreover, during her deposition, plaintiff was asked whether her view was only that "disciplining an employee is meanspirited," i.e., bad management. Her response reflects much more than a concern for bad management:
[Nurse Young] herself feltand, again, I only found this out later, there had been an incident on her unit, she has she had a [nursing assistant], ..., who routinely left his patients wet, cold, unfinished, untaken care of, if that's even a word, to go down and have his smokes, to chat with Mrs. Geis, to smoke with the gang down there, he was engaged or intendedprepared to get married to one of the LPNs, [Nurse Young] wrote him up for leaving his patients. Now, he had a history of this. She was told by management you don't write him up.
Indulgently read, plaintiff's deposition testimony reveals, in laymen's terms, an awareness that what occurred was not only not "good management," but something more fundamental. She expressed it as a violation of Young's Civil Service rights and as fraudulent. That may or may not be so. The inquiry is whether plaintiff had an objective, reasonable belief that employer conduct within the scope of the CEPA protections was involved. And, in this regard, we do not impose precise legal knowledge upon her.
Under the factual scenario posited by plaintiff, she could have objectively reasonably believed the charges were fraudulent, N.J.S.A. 34:19-3c(2), as four of them did not involve Young and the remaining one was simply a misdate not, apparently, thought to be an error by another supervisor.[4] She also could have objectively reasonably believed the filing of charges that she believed were substantially unfounded against Young was violative of proper quality of patient care, N.J.S.A. 34:19-3c(1), as that is all Young was attempting to accomplish when she issued the warning to Geis' assistant nurse friend. Punishing Young for attempting to protect the patients cannot be consistent with good patient care. Similarly, if the facts are true, plaintiff could have objectively reasonably believed the filing of the charges would violate a clear mandate of public policy concerning public health. It cannot be in the interest of patient care or public health to retaliate against a health care employee validly concerned with patient care, and then to retaliate against that employee's supervisor for refusing to file substantially unfounded disciplinary charges against that employee.
We add the following comments. CCHSC's response, aside from the contention that trial counsel did not articulate the legal contentions appellate counsel has, see infra n. 1, is that the history of the Young charges was not known to plaintiff at the time of her refusal. We agree that knowledge of that history at that time is critical to plaintiff's cause of action. Without it, her refusal becomes a disagreement over whether disciplinary charges should be brought upon dubious charges. Were that all there were, the charged employee could pursue the disputed discipline through the *500 available grievance procedures. But we do not think CEPA would clothe a protesting coemployee with additional protection for refusing the supervisor's direction to serve the charges.
Nonetheless, here, viewed favorably to plaintiff, the motion record raises a factual question as to when plaintiff learned of the history behind the Young charges. To be sure, when describing this history during her deposition, she said "I only found this out later." But later as to when? After Young initiated her charges? After plaintiff investigated Geis' charges against Young but before she declined to serve them? Or sometime after she declined to do so? If the latter, plaintiff cannot claim the protection of CEPA. But if the former two, she can, assuming she can prove as well, the objective reasonableness of her belief the charges were unfounded and were in retaliation for a legitimate, patient care related disciplinary action against the nursing assistant, and, of course, that retaliatory action, in fact, ensued against plaintiff for refusal to serve the charges.
Reversed.
NOTES
[1] We note in this respect CCHSC's contention that the legal arguments presented to us by plaintiff's appellate counsel are somewhat different, at the least more focused, than those presented by trial counsel. Nonetheless, the factual support for those contentions was before the motion judge. We, therefore, will consider them, as the precise issue before us is, in any event, a matter of law and subject to our de novo review. Bello v. Lyndhurst Bd. of Educ., 344 N.J.Super. 187, 190, 781 A.2d 70 (App.Div.2001).
[2] CCHSC is a long-term care facility and psychiatric hospital. It receives federal funding and, thus, must comply with various federal standards. The MDS forms are intended to provide detailed assessments and care screening information for CCHSC's patients. The completeness and accuracy of these forms is an important factor considered by the federal auditors in determining whether CCHSC has complied with the federal standards.
[3] Whether retaliatory actions ensued was not an aspect of the motion for summary judgment. Suffice it to say, plaintiff's allegations of what thereafter occurred would seem to evidence retaliation, at least viewed favorably for her. The following has been alleged by plaintiff. Shortly after the incident, Geis removed plaintiff as Assistant Director of Nurses. Thereafter, Geis prevented her from being hired as the new Director of Nursing, despite the fact that her Civil Service rating was excellent and she had seniority over persons hired from the outside for the position in 1995, and then again in 1997. Additionally, plaintiff was confronted by the Director of Nursing and Director of Human Resources with a memo containing over a dozen alleged failures on her part of goals that had been outlined for her by Geis. The Director of Nursing, "admitted to plaintiff that `[i]f you keep this position, you will be working in a hostile environment.'" Shortly thereafter, plaintiff was given another memo listing six more deficiencies, and "five arbitrary expectations with a deadline [that was nine days later] under the threat of suspension if the expectations were unmet." Plaintiff was suspended for three days for failure to comply with the deadline. Other alleged retaliatory conduct included a suspension for five days for allegedly failing "to produce an outline of a two-day orientation," which plaintiff claims she had completed and submitted. Thereafter she was demoted pursuant to an "economy and efficiency" action that she claims was pretextual and pursuant to which her former position was filled by an unqualified person. Plaintiff was next suspended when, she alleges, she mistakenly took home a resident's chart, which resembled her own binder. According to plaintiff, the suspension occurred despite the fact that the Board of Nursing had investigated the matter at the request of Geis but found no misconduct. Several other, assertedly unwarranted, suspensions occurred until, finally, plaintiff was terminated as a result of her failure to prove proficiency in e-mail procedures, despite the fact that, according to her, she reasonably had been unable to attend the e-mail training class.
[4] We recognize that, in fact, all of the elements of actionable fraudulent conduct, e.g. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997), may not exist here. But the Legislature did not condition CEPA protection upon a law degree. The dictionary definition of fraudulent includes "deceitful." Webster's II New College Dictionary 445 (1999). At the least plaintiff could reasonably believe Geis' insistence that plaintiff serve the charges, despite the result of her investigation of them, as "deceitful" when coupled with the ulterior motivation plaintiff reasonably believed was behind the charges.