781 A.2d 70 (2001)
344 N.J. Super. 187
Donna BELLO, Plaintiff-Appellant,
v.
LYNDHURST BOARD OF EDUCATION and Joseph Abate, Jr., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2001.
Decided October 11, 2001.
*72 Anthony P. Castellani, Trenton, argued the cause for appellant (Needell & Castellani, attorneys; Mr. Castellani, on the brief).
Gloria B. Cherry, Livingston, argued the cause for respondents (Braff, Harris & Sukoneck, attorneys; Ms. Cherry, on the brief).
Before Judges HAVEY,[1] COBURN and WEISSBARD.
*71 The opinion of the court was delivered by WEISSBARD, J.A.D.
Plaintiff Donna Bello appeals from an order granting summary judgment to defendants dismissing her complaint in which she had alleged termination from her employment with the Lyndhurst Board of Education (the Board) in retaliation for certain political activity. Both the Board and its Superintendent, Joseph A. Abate, Jr., were named as defendants. Plaintiff asserted claims for violation of 42 U.S.C.A. § 1983, 42 U.S.C.A. § 1985 and N.J.S.A. 18A:27-4.1, as well as a common law cause of action based upon Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (1980).
Our review of the Law Division's grant of summary judgment is de novo. Graziano v. Grant, 326 N.J.Super. 328, 338, 741 A.2d 156 (App.Div.1999). This court, on appeal of a grant or denial of summary judgment, applies the same standard as the trial court. R. 4:46-2. We look at all of the evidence submitted in the "light most favorable to the nonmoving party," and determine if the moving party is entitled to summary judgment as a matter of law. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995). However, there are cases where the evidence "is so one-sided that one party must prevail as a matter of law." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91L.Ed.2d 202, 214 (1986)). Applying these standards, we affirm.
By contract dated June 27, 1994, the Board hired plaintiff to fill the newly-created position of Assessment Manager Processor. Her term of employment ran from July 1, 1994 through June 30, 1995 at an annual salary of $20,120. The title of plaintiff's position was changed to that of a twelve-month secretary by virtue of a new contract dated September 6, 1994 made retroactive for the same term of employment and salary as the original contract.[2]
The position of Assessment Manager Processor had been created by the Board with a view toward improving the scores of its high school students on proficiency *73 tests and early warning tests mandated by the State. The position envisioned "a computer bank" of tests that teachers could utilize to improve the scores of their students in various academic subjects. During her initial term of employment, the school year 1994-95, plaintiff sought to get the position "up and running." She also performed a variety of tasks in the Board's central office under the direction of Acting Superintendent Talarico and, in addition, served as substitute calling clerk with the responsibility of calling in substitute teachers. In an appraisal of March 27, 1995, Talarico found that she exceeded performance standards in five of eight categories and met performance standards in the remaining three categories.
Plaintiff and her family had been actively involved in local Lyndhurst politics since at least 1982. Plaintiff's father-in-law, Vincent J. Bello (Bello, Sr.), is a former member of the Lyndhurst Board of Education. Beginning in 1990, Bello, Sr. had joined with John DiLascio and his son, Richard DiLascio, the current Board attorney, to promote candidates for the Board opposing the slate of candidates backed by the then Mayor of Lyndhurst. As a result of the 1992 Board election, the candidates backed by the DiLascio/Bello faction gained majority control of the Board. Plaintiff and her husband, Vincent J. Bello, Jr. (Bello, Jr.), actively supported these same candidates. Eventually, there was a falling out between the DiLascios and the Bellos. Although the Bello family supported the DiLascio-backed candidates in the 1995 Board elections, a rumor surfaced that, in fact, the Bellos had worked in opposition to the DiLascio camp. John DiLascio confirmed the existence of this rumor to Bello, Sr. Shortly after the election, plaintiff received notice from Talarico that she would not be rehired for the 1995-96 school year. Plaintiff's husband spoke with a member of the Board about the loss of his wife's job and that individual expressed surprise and advised Bello, Jr. that the termination had not been made with the requisite Board approval. As a result, plaintiff did not lose her position but was rehired under a new employment contract dated June 12, 1995 to again serve as a twelve-month secretary at a salary of $21,499. She also continued to handle duties as substitute calling clerk.
Superintendent Joseph Abate, Jr. returned from a leave of absence and assumed his duties for the 1995-96 school year. Apparently because there was not enough work to support plaintiff's position in the central office, in June 1995 she was transferred from the position of Assessment Manager Processor to that of a secretary in the high school guidance department, where a secretary had retired. Abate had decided that the interests of the district would be best served by placing plaintiff in a full time position where she was needed. Although plaintiff initially understood that this would be a temporary change, she realized when school reopened in September 1995 that the change was permanent. She continued to perform some functions as Assessment Manager Processor but was later directed to discontinue those duties. The Lyndhurst Advocate, a private newsletter put out by the DiLascios, touted plaintiff's move as a consolidation that "saved taxpayers $24,572."
Plaintiff's supervisor in the guidance department was Virginia Testa. It was alleged that animosity existed between Bello, Sr. and Testa as a result of criticisms that Bello had leveled against Testa when Bello was a member of the Board many years earlier. In any event, Testa evaluated plaintiff on three occasions: October 16, 1995, February 28, 1996, and April 26, 1996. In the first evaluation, Testa found that plaintiff did not meet performance standards in five out of eight categories. *74 Plaintiff filed a response to the evaluation, challenging Testa's opinions. Plaintiff also met with Abate about the possibility of a transfer to a position outside the guidance office so that she would not be under the supervision of Testa. According to plaintiff, Abate advised her that although he would be happy to have her back in the central office, "the Board" would not permit him to effectuate such a transfer.[3] Despite plaintiff's inquiry, Abate would not specify whom on the Board was opposed to plaintiff's transfer. Plaintiff also disputed Testa's two subsequent negative evaluations. After the third evaluation she again requested a transfer in writing to Abate on May 3, 1996. In that memo plaintiff noted that Testa had recommended that her services as secretary no longer be continued in the guidance office and asked that she be allowed to resume full time duties as Assessment Manager Processor or be transferred to a related secretarial position.
During the 1996 Board election, plaintiff and her family actively and openly supported candidates opposed to the DiLascio slate. Plaintiff's position and the amount of her salary as compared to other secretaries was raised as a political issue by the DiLascio candidates through political flyers. Thereafter, the Board eliminated plaintiff's position as Assessment Manager Processor as a result of the voters having failed to approve a "cap waiver" for the 1996-97 school budget, which would have allowed the Board to spend additional money beyond the budget to retain this position. The decision to eliminate the Assessment Manager Processor position was motivated solely by budgetary consideration, Abate having determined that it was a nonessential position. Indeed, the Board did not even mention the individual occupying the position when the termination decision was made. A memorandum from Abate to the Board, dated May 6, 1996, indicated the elimination of a number of positions. With respect to plaintiff, the reason given for elimination of her job was "cap waiver/cause."[4] One day later, Abate wrote plaintiff that she would not be offered employment for the 1996-97 school year, and informed her that she had the right to request a written statement of reasons for her termination. In response to such a request, by letter dated June 4, 1996, Abate stated the following:
I am sorry to inform you that you will not be reappointed for the 1996-97 school year due to financial uncertainty, enrollment changes, and/or possible staff reorganization. Your employment as Assessment Manager Processor with the Lyndhurst Board of Education is terminated.
Having reviewed the facts, we turn to an explication of the legal principles against which plaintiff's claim must be judged. In two seminal cases, the Supreme Court has "held that it is unconstitutional for public agencies to discharge employees who are neither policymaking nor advisory based on their political affiliations, reasoning that an employee's exercise of First Amendment rights outweighs the government's interest in maintaining a system of political patronage." Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir.1997) (citing Elrod v. Burns, 427 U.S. 347, 372-73, 96 S.Ct. 2673, 2689-90, 49 L.Ed.2d 547, 565 (1976) and Branti v. Finkel, 445 U.S. 507, 514-15, 100 S.Ct. 1287, 1292-93, 63 L.Ed.2d 574, 581-82 (1980)). See Battaglia *75 v. Union County Welfare Bd., 88 N.J. 48, 60, 438 A.2d 530 (1981) (noting the holding of Elrod to be "that a nonpolicymaking, nonconfidential public employee could not be discharged solely because of his political beliefs.") A prima facie case of political discrimination is made out when an employee shows "that [she] worked for a public agency in a position that does not require a political affiliation, that [she] were engaged in constitutionally protected conduct, and that the conduct was a substantial or motivating factor in the government's employment decision." Stephens, supra, 122 F.3d at 176. "Once the employee makes this demonstration, the employer may avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." Ibid. This burden-shifting mechanism is similar to that employed in other employment discrimination contexts. Ibid.; see also D'Aurizio v. Palisades Park, 963 F.Supp. 387, 392-93 (D.N.J.1997).
In this case there is no doubt that plaintiff worked for a public agency and her position was not one that required a political affiliation. It is also clear that plaintiff did engage in constitutionally protected conduct by aligning herself with and campaigning for the anti-DiLascio slate of candidates, at least in the 1996 election just preceding her termination. The critical issue here involves the third prong of the test set out in Stephens, which is whether plaintiff's political affiliation was a "substantial or motivating factor" in her termination. Stephens, supra, 122 F.3d at 176. On that issue, the trial judge stated the following in granting the summary judgment motion:
In this case, the Plaintiff is unable to make out a prima facie showing of discrimination. Her own witnesses have testified that there was no connection between the evaluations she received from Ms. Testa and the termination of her employment. The position that the Plaintiff was initially appointed to was eliminated for budgetary reasons by the Board of Education. Further, this Court finds that there was ample evidence for the Board of Education to terminate the Plaintiff as a secretary based on the poor evaluations she received from Ms. Testa. The Plaintiff has not brought forth any credible evidence to support her claim that she was fired because her family backed the "wrong" candidates during the School Board elections.
We agree with the court's conclusion, but not entirely with its analysis. While it can be inferred that there was animosity between Testa and Bello, Sr. that might have motivated Testa to give plaintiff unsatisfactory evaluations, there was no evidence to suggest that Testa acted because of plaintiff's involvement in Board politics. Indeed, based upon Abate's letter of June 4, 1996, plaintiff's termination was not based on her unsatisfactory evaluations by Testa at all. Although Abate's May 6 memo to the Board recited "cap waiver/cause" as the basis for plaintiff's termination, his June 4, 1996 letter did not refer to termination for cause but to "financial uncertainty, enrollment changes, and/or possible staff reorganization." Thus, we must evaluate whether there was sufficient evidence in the record connecting plaintiff's termination by Abate with her political activity.
There is no doubt that the record supports the conclusion that the DiLascios exerted considerable, if not controlling, influence over the Board. As one opposition member of the Board put it, the Board "is nothing but a political machine for the DiLascios and it can be proven." After *76 the April 1995 Board election, and the rumor that the Bello family had backed the opposition slate, Talarico notified plaintiff that her employment would not be renewed. That action, however, apparently was taken in violation of the law and was subsequently rescinded when a friendly member of the Board intervened on plaintiff's behalf. While plaintiff was subsequently moved to the guidance department, there is no evidence to suggest that her move was made by Abate with knowledge that Testa harbored animosity toward Bello, Sr. and would "take it out" on plaintiff.
Plaintiff was, however, terminated by Abate shortly after the April 1996 election in which the Bellos had actively supported the anti-DiLascio slate of candidates, an election in which plaintiff's position and salary were raised as a political issue by the DiLascio slate during the election. Further, although plaintiff was terminated as Assessment Manager Processor, in fact she had been functioning as a secretary in the guidance department. Her position in the guidance department, as well as her job as substitute calling clerk, were filled by another individual after plaintiff had been terminated. As a result, Abate's statement of the reasons for plaintiff's termination in his June 4 letter is subject to some question, although he is referring in that letter to the Assessment Manager Processor position and not that of guidance department secretary. In addition, plaintiff points out that the individual who subsequently filled her position in the guidance department also was given unsatisfactory performance ratings, but, rather than being terminated, was transferred to a different position.
The critical issue is thus further refined to whether the record supports a legitimate inference, as opposed to mere speculation, that Abate acted to terminate plaintiff because of her family's political involvement. Abate testified that he did not even know which candidates the Bellos supported in the 1996 election and was never present at any discussions by Board members regarding the Bellos support of any particular candidates. Although Abate was deposed, plaintiff can point to no evidence suggesting that he acted for improper motives. Such a conclusion could only be drawn by the most strained of inferences. One would have to conclude that the DiLascio control was so pervasive that even the District Superintendent, Abate, acted simply as a "tool" of that political organization. On this record, we simply cannot draw that conclusion. Rather, we conclude that plaintiff did not establish facts from which the reasonable inference could be drawn that her termination was prompted by an improper, political motivation on the part of Abate. As required by Brill, we have made a "searching review" of the record and find that there is no "genuine issue of material fact ... requiring disposition at trial." Although the circumstances are suspicious, they are, in the final analysis, insufficient to sustain plaintiff's § 1983 claim against a motion for summary judgment.
Having found plaintiff's § 1983 claim wanting, her § 1985 conspiracy claim fails as well. We note, however, that although plaintiff's brief to this court refers to a conspiracy among unnamed Board members, Abate, Richard DiLascio, and John DiLascio, her complaint only alleged a conspiracy between the Board and Abate. Because Abate was employed by the Board, there is merit to defendant's argument that Abate and the Board constituted a single entity and, as a result, there were not "two or more persons" as required for a conspiracy. See Moody v. Jefferson Parish Sch. Bd., 803 F.Supp. *77 1158, 1166 (E.D.La.1992), aff'd, 2 F.3d 604 (5th Cir.1993).
Because there was insufficient evidence to support a finding that plaintiff was terminated because of her constitutionally protected political activity, the foundation for her claim under Pierce v. Ortho Pharmaceutical Corp., supra, is removed and that claim also was properly dismissed.
Finally, plaintiff contends that the trial court erred in dismissing her claim based on N.J.S.A. 18A:27-4.1 as defendants did not move for summary judgment on that aspect of her complaint. Defendants answer that plaintiff did not raise the statutory claim in the course of responding to their summary judgment motion. However, that response is somewhat disingenuous. Plaintiff is only required to respond to that upon which defendants based their motion. Although it might have been prudent for plaintiff to remind the trial court that another aspect of the case existed, we cannot say that plaintiff forfeited her right to advance the argument on this appeal.
While the trial court did not specifically address this contention, we have examined it and conclude that it has no merit. We see no basis upon which to conclude that the statute, even if violated, implicitly conferred a private cause of action upon the aggrieved employee. See Crusco v. Oakland Care Center, Inc., 305 N.J.Super. 605, 614-15, 702 A.2d 1363 (App.Div.1997). One of the standards to be examined in making that determination is "whether there is any evidence that the Legislature intended to create a private cause of action under the statute." Id., quoting Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26, 36 (1975). Here, the statute gave plaintiff the right to appeal her termination by an "informal appearance before the Board" at which she could attempt "to convince the members of the Board to offer reemployment." Plaintiff, in fact, unsuccessfully availed herself of that opportunity. We see no evidence that the legislature intended to grant any additional rights, in the form of a private cause of action.
Affirmed.
NOTES
[1] Judge Havey did not originally participate in this case, but has, with the consent of counsel, been added to the panel deciding the matter.
[2] According to Abate, the title change simply reflected compliance with union negotiated salary guides which required that everyone in plaintiff's position be designated as either a ten-month secretary or a twelve-month secretary.
[3] Abate testified that there were no openings at the time plaintiff requested a transfer.
[4] This statement is somewhat contradicted by Abate's testimony that at the time of the cap waiver proposal he considered plaintiff to be a guidance secretary.