NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1251-15T3

DOMINIQUE DEMARQUET,

 Plaintiff-Appellant,

v.

MAYOR FELIX ROQUE, TOWN OF
WEST NEW YORK, and WEST NEW
YORK BOARD OF EDUCATION,

 Defendants-Respondents.
_____________________________

 Argued telephonically October 3, 2017 –
 Decided November 17, 2017

 Before Judges Gilson and Mayer.

 On appeal from Superior Court of New Jersey,
 Law Division, Hudson County, Docket No.
 L-4820-13.

 Louis A. Zayas argued the cause for appellant
 (Law Offices of Louis A. Zayas, attorneys; Mr.
 Zayas and Alex Lee on the briefs).

 Amy V. McClelland argued the cause for
 respondent Felix Roque (Whipple Azzarello,
 LLC, attorneys; John A. Azzarello and William
 J. Muñoz, on the brief).

 Sandra N. Varano argued the cause for
 respondent West New York Board of Education
 (Nirenberg & Varano, LLP, attorneys; Ms.
 Varano, on the brief).
 Robert E. Levy argued the cause for respondent
 Town of West New York (Scarinci & Hollenbeck,
 LLC, attorneys; Mr. Levy and Roshan D. Shah,
 on the brief).

PER CURIAM

 Plaintiff Dominique Demarquet, a former employee of the West

New York Board of Education (BOE), sued defendants Mayor Felix

Roque, the Town of West New York, and the BOE alleging that she

had been fired in retaliation for her political support of the

former mayor and her refusal to support Mayor Roque. She appeals

from orders granting summary judgment to defendants and dismissing

with prejudice her complaint that asserted violations of the New

Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2.

 Plaintiff also appeals from an order denying her motion to

strike Mayor Roque's answer after the Mayor invoked his Fifth

Amendment privilege against self-incrimination during his

deposition. Finally, plaintiff appeals from two orders addressing

discovery issues, including an order granting Mayor Roque a

protective order and an order denying her request to compel a

deposition.

 We reverse the orders granting summary judgment to defendants

because of material factual disputes concerning the motive for

plaintiff's discharge. We also remand for further consideration

the orders denying plaintiff's motion to strike the Mayor's answer,

 2 A-1251-15T3
the order granting the Mayor a protective order, and the order

denying plaintiff's motion to compel the deposition of Clara

Herrera.

 I.

 We summarize the relevant facts as developed in the summary

judgment record, and view those facts in the light most favorable

to plaintiff, the non-moving party. Davis v. Brickman Landscaping,

Ltd., 219 N.J. 395, 406 (2014) (citing Brill v. Guardian Life Ins.

Co. of Am., 142 N.J. 520, 540 (1995)).

 Plaintiff has been a resident of West New York for most of

her life. In 2002, West New York hired her, first as a part-time

employee, and later as a full-time employee in the Cultural Affairs

Department. During that time, she was an active supporter of the

then-mayor Silverio Vega.

 In 2008, the BOE hired plaintiff as a secretary. Over the

next three years, she was promoted and her salary increased from

$34,000 to just over $57,000. Plaintiff also was attending college

part-time. Accordingly, she requested and was granted an

adjustment to her work schedule that allowed her to leave early

two days a week and make up the time on the days that she did not

have classes.

 3 A-1251-15T3
 While plaintiff was working for the BOE, she remained

politically active. In that regard, she continued to campaign for

and support Mayor Vega.

 In 2011, Roque challenged Vega for the position of Mayor of

West New York. West New York has a commission form of government,

with five commissioners who elect the mayor. N.J.S.A. 40:72-1 and

N.J.S.A. 40:72-10. Accordingly, Roque ran with a slate of proposed

commissioners. Plaintiff supported Mayor Vega and her activities

included handing out pamphlets and attending fundraising events.

In May 2011, Roque's slate of commissioners won the election and

Roque, thereafter, was elected Mayor.

 Plaintiff contends that after Roque became Mayor, he

effectively took control of the BOE. At that time, West New York

was a Type I school district, and its board members were appointed

by the Mayor. N.J.S.A. 18A:12-6. Mayor Roque blocked two board

members proposed by Mayor Vega. Mayor Roque was also successful

in expanding the number of members of the BOE. Thus, Mayor Roque

was able to appoint the majority of the BOE's members.

 Plaintiff certified that Mayor Roque used his influence to

pressure the BOE into hiring people who had supported him and

terminating people who had not supported him. In that regard,

plaintiff certified that she became aware that the Mayor had a

 4 A-1251-15T3
"hit list", which he used to target people for termination if they

refused to support him politically.

 Plaintiff testified that after Roque became Mayor, she was

solicited several times by other BOE employees to support the new

Mayor. She, however, refused to support him. She also explained

that there was a recall petition, during which there were efforts

to remove Mayor Roque. Plaintiff testified that while at work

during that time, another BOE employee asked her to purchase a

ticket to a fundraiser for Mayor Roque. She declined.

 In early October 2011, the BOE notified plaintiff that it

would be reviewing her employment. She discussed that notice with

her supervisor, who told her that he was surprised she got such a

notice because there were no issues with her performance. On

October 12, 2011, the BOE terminated plaintiff, effective the next

day. Plaintiff was not told why she was terminated.

 In August 2012, approximately eleven months after plaintiff's

termination, the Office of Fiscal Accountability and Compliance

(OFAC) of the New Jersey Department of Education, initiated an

investigation concerning the hiring practices of the West New York

school district. After interviewing a number of people and

reviewing various documents, the OFAC concluded that Mayor Roque

had "interjected himself into the district's hiring process." The

report found that "some district employees identified as loyal to

 5 A-1251-15T3
the former mayor were identified and selected for termination,

demotion or reassignment to less desirable work locations." The

OFAC investigation "also confirmed that the Mayor, his aides,

board members, and district employees actively solicited

contributions from district employees who often felt obligated to

contribute to ensure continued employment."

 Moreover, "[t]he OFAC review confirmed several instances of

political retaliation against individuals deemed to be

unsupportive of the Mayor." In that regard, the OFAC investigators

were informed that a list of names submitted to the Superintendent

for employment action was "commonly referred to as the Mayor's Hit

List." The OFAC report also found that by appointing the majority

of BOE members, Mayor Roque had "the opportunity to influence

employment decisions presented to the [BOE] for approval." The

OFAC then concluded that "the Mayor utilized his authority and

influence to direct [BOE] actions concerning employment decisions

in the [West New York school] district."

 In October 2013, plaintiff sued defendants, alleging that

they had violated the CRA by interfering with her constitutional

rights to freedom of association and speech. Specifically,

plaintiff contended that her employment with the BOE had been

terminated in retaliation for her political activities and

associations.

 6 A-1251-15T3
 The parties engaged in discovery and two issues arose relevant

to this appeal. First, plaintiff sought to compel the deposition

of Mayor Roque. The Mayor moved for a protective order to prevent

the distribution of his deposition to third parties. The court

initially denied that motion in a July 24, 2015 order. However,

after the Mayor moved for a stay so that he could seek

interlocutory appeal, the trial court sua sponte reconsidered. In

an order dated August 21, 2015, the court granted the protective

order. Plaintiff moved for reconsideration, but the trial court

denied that application in an order entered on October 9, 2015.

 At his deposition, Mayor Roque asserted his Fifth Amendment

privilege against self-incrimination in response to certain

questions relating to the OFAC report. The Mayor, however,

answered other questions. He denied any knowledge of plaintiff

or her political activities. The Mayor also denied playing a role

in BOE personnel decisions. He gave that answer, despite the fact

that the OFAC report concluded that he played a role in BOE

personnel decisions.

 The second discovery issue concerned the deposition of Clara

Herrera. On June 12, 2015, while discovery was open, plaintiff

sent a notice to take the deposition of Herrera on a date before

discovery closed. Herrera was the Assistant Superintendent of the

BOE, and allegedly the person who helped coordinate the Mayor's

 7 A-1251-15T3
hit list. Herrera had also been an active supporter of Roque when

he ran for election in 2011. Herrera's deposition was adjourned

and did not take place before the close of discovery because

counsel for West New York was on vacation.

 Thereafter, on June 26, 2015, plaintiff filed a motion to

compel Herrera's deposition. Discovery closed on July 2, 2015.

The trial court denied plaintiff's motion in an order entered on

July 10, 2015. In that order, the court noted that the discovery

end date had been extended to July 2, 2015, so that all depositions

could be taken before that date. The order also noted that

plaintiff had not filed a motion to extend that July 2, 2015 end

date.

 In August 2015, following the close of discovery, defendants

moved for summary judgment. In support of those motions, the BOE

submitted the certification of the former Superintendent, John

Fauta. Fauta certified that he had recommended that plaintiff not

be re-hired in October 2011 because her salary was significantly

higher than the average salary of her peers, the school district

was facing a budget crisis, and plaintiff had requested a

modification of her work schedule to accommodate her college

schedule. Fauta also certified that after plaintiff was fired,

she was not replaced.

 8 A-1251-15T3
 In opposing summary judgment, plaintiff certified that she

was never given a reason for her termination when she was fired.

Plaintiff also certified that she believed that she was on Mayor

Roque's hit list, and that she was fired because she did not

support Mayor Roque and openly campaigned for former Mayor Vega.

Plaintiff also certified that her position as secretary at the BOE

did not involve any policy-making decisions and that political

affiliation was not a requirement for her position.

 In addition, plaintiff submitted certifications from Scott

Cannano and Michelle Lopez. Cannano was a former principal in the

West New York school district. He certified that, "similar" to

plaintiff, he was demoted and terminated because he did not buy

tickets to Mayor Roque's political fundraisers. Cannano also

asserted that in the fall of 2011, he was involved in budget

meetings with Superintendent Fauta, and did not learn of any

budgetary concerns. Thus, he testified: "During my time working

in the school district as an educator, I never witnessed anyone

either an administrator, or secretaries, being fired for budgetary

reasons." Cannano also challenged Fauta's claim that plaintiff

was not replaced. In that regard, he certified: "Contrary to

defendants' assertions, the Board of Education Business Office has

not remained only five individuals after Dominique Demarquet's

termination, but actually increased as it now employs eight

 9 A-1251-15T3
administrative employees." In his certification, Cannano also

acknowledged that, like plaintiff, he had a pending lawsuit against

defendants.

 Lopez is a third grade teacher in the West New York school

district. She certified that she was told about a hit list of

school employees who were targeted for retaliation because they

did not support Mayor Roque. She also certified that she

campaigned for former Mayor Vega, refused to purchase a ticket for

a fundraiser for Mayor Roque, and was told by two BOE employees

that she was on the hit list. Thereafter, the BOE did not reappoint

Lopez as a supervisor despite Superintendent Fauta's

recommendation that she be reappointed.

 In conjunction with her opposition to defendants' summary

judgment motions, on September 11, 2015, plaintiff cross-moved to

strike Mayor Roque's answer. Plaintiff argued that the Mayor's

answer should be stricken because he asserted his Fifth Amendment

privilege against self-incrimination in response to certain

questions at his deposition. In opposing the summary judgment

motions, plaintiff also argued that an adverse inference should

be drawn against Mayor Roque because of his assertion of his Fifth

Amendment privilege.

 After hearing oral argument, the trial court granted summary

judgment in favor of defendants. The court set forth the reasons

 10 A-1251-15T3
for its decision on the record on September 18, 2015, and entered

two orders that day. Citing our decision in Bello v. Lyndhurst

Board of Education, 344 N.J. Super. 187 (App. Div. 2001), the

trial court identified the three prongs necessary for plaintiff

to show that her termination violated her constitutional rights:

(1) she was employed by a public entity; (2) in a position where

political affiliation was not a condition of employment; and (3)

she was terminated for her political affiliations or activities.

Id. at 194. The court then found that there was no dispute that

plaintiff had satisfied the first two prongs, and that the summary

judgment motion hinged on the third prong.

 The court reasoned that only three pieces of evidence

supported plaintiff's claim of political retaliation: the

certification of Cannano, the certification of Lopez, and the OFAC

report. The trial court held that the certifications of Lopez and

Cannano addressed only their own circumstances and did not discuss

plaintiff's termination. The court also reasoned that the

certifications made "bare assertions" that were "untested" because

neither Lopez nor Cannano had been deposed. Finally, the court

stated that the certifications were "rife with hearsay and

unsubstantiated statements and arguments and are, therefore,

evidentially infirm."

 11 A-1251-15T3
 Turning to the OFAC report, the trial court held that the

report was inadmissible hearsay. In that regard, the court

reasoned that neither the references to statements made by BOE

employees or public officials, nor the report's conclusions were

admissible. In support of its holding, the trial court cited our

decisions in Villanueva v. Zimmer, 431 N.J. Super. 301 (App. Div.

2013), and Meunch v. Township of Haddon, 255 N.J. Super. 288 (App.

Div. 1992).

 The trial court also reasoned that it would be "speculative"

to try to determine what Mayor Roque would or would not have said

in response to questions when he asserted his Fifth Amendment

privilege. Thus, the trial court effectively refused to draw an

adverse inference from the Mayor's refusal to answer questions at

his deposition.

 In its September 18, 2015 decision and orders, the trial

court did not address plaintiff's cross-motion to strike Mayor

Roque's answer. Instead, a different judge entered an order on

October 9, 2015, denying the motion as "moot." That order was

apparently entered without oral argument and was not supported by

any written or oral opinion, apart from a handwritten note on the

order, which stated: "Denied as moot – summary judgment granted

on 9-18-15."

 12 A-1251-15T3
 II.

 Plaintiff appeals from: (1) the September 18, 2015 orders

granting summary judgment to defendants; (2) the October 9, 2015

order denying her motion to strike Mayor Roque's answer; (3) the

August 21, 2015 order granting a protective order over the

deposition of Mayor Roque and the October 9, 2015 order denying

reconsideration; and (4) the July 10, 2015 order denying her motion

to compel the deposition of Clara Herrera.1

 We will address these orders in turn, and for the reasons

that follow, we reverse the summary judgment orders and remand the

other orders for further consideration.

 A. The Summary Judgment Orders

 Our review of orders granting summary judgment is de novo,

and we apply the same standard employed by the trial court. Davis,

supra, 219 N.J. at 405. Accordingly, we determine whether the

moving party has demonstrated that there are no genuine disputes

1
 In her amended notice of appeal, plaintiff also identified other
orders from which she was appealing. Those orders included an
order dated July 10, 2015, which denied her motion to compel the
deposition of Robert Cicchino; an order dated July 24, 2015, which
quashed her late amended interrogatory answers; and a September
18, 2015 order denying reconsideration of the order quashing the
late interrogatory answers. Plaintiff, however, failed to address
these other orders in her brief on appeal. Thus, we deem her
arguments concerning those orders to be abandoned. Zavodnick v.
Leven, 340 N.J. Super. 94, 103 (App. Div. 2001) (citing Carter v.
Carter, 318 N.J. Super. 34, 42 n.8 (App. Div. 1999)).

 13 A-1251-15T3
as to any material facts and, if not, whether the moving party is

entitled to judgment as a matter of law. Id. at 405-06; Brill,

supra, 142 N.J. at 540; R. 4:46.

 In her complaint, plaintiff asserted a violation of the CRA.

The CRA grants a private right of action against persons who act

"under color of law" to interfere with substantive "rights,

privileges or immunities" secured by the federal and New Jersey

constitutions and federal and New Jersey laws. N.J.S.A. 10:6-

2(c).

 The United States Supreme Court has held that it is

unconstitutional for public agencies to discharge employees who

are neither policy-makers nor advisors based on their political

affiliations, reasoning that an employee's exercise of his or her

First Amendment rights outweighs the government's interest in

maintaining a system of political patronage. See Elrod v. Burns,

427 U.S. 347, 372-73, 96 S. Ct. 2673, 2689-90, 49 L. Ed. 2d 547,

565 (1976). See also Brianti v. Finkel, 445 U.S. 507, 514-15, 100

S. Ct. 1287, 1292-93, 63 L. Ed. 2d 574, 581-82 (1980); Battaglia

v. Union County Welfare Board, 88 N.J. 48, 60 (1981) (noting that

"the holding of Elrod is that a non-policy-making, non-

confidential public employee could not lawfully be discharged

solely because of his [or her] political beliefs").

 14 A-1251-15T3
 To establish a prima facie case of political discrimination,

an employee must show "that [she] works for a public agency in a

position that does not require a political affiliation, that [she]

was engaged in constitutionally protected conduct, and that the

conduct was a substantial or motivating factor in the government's

employment decision." Bello, supra, 344 N.J. Super. at 193 (App.

Div. 2001) (quoting Stevens v. Kerrigan, 122 F.3d 171, 176 (3d

Cir. 1997)). After the employee makes a prima facie case, "the

employer may avoid a finding of liability by proving by a

preponderance of the evidence that the same employment action

would have been taken even in the absence of the protected

activity." Ibid. This burden-shifting mechanism is similar to

the mechanism used in other employment discrimination cases. Ibid;

see also D'Aurizio v. Palisades Park, 963 F. Supp. 387, 392-93

(D.N.J. 1997).

 Here, defendants do not dispute that plaintiff worked for a

public agency. Neither do they dispute that her position did not

required a political affiliation. Moreover, the evidence

establishes that plaintiff engaged in constitutionally protected

conduct by campaigning for and supporting the former Mayor Vega

and by refusing to give her political support to Mayor Roque.

Accordingly, the critical issue here is whether plaintiff's

political affiliations and activities were a "substantial or

 15 A-1251-15T3
motivating factor" in her termination. We hold that that question

was a disputed issue of material fact, which was not appropriate

for a determination on summary judgment.

 Both defendants and the trial court inappropriately narrowed

their focus to the certifications from Cannano and Lopez and the

OFAC report. This narrow focus ignored plaintiff's own testimony

and certification. Plaintiff contended that she was informed of

a hit list and learned that she was on that list. Although

defendants dispute that plaintiff had any evidence to support that

claim, sufficient evidence created a question of fact to be

considered by a jury.

 Plaintiff's claims about the hit list and political

retaliation were corroborated by other evidence. Specifically,

the certifications of Cannano and Lopez support plaintiff's

testimony. While neither Cannano nor Lopez were aware of specifics

concerning plaintiff, their certifications support plaintiff's

contention that there was a culture of political retaliation under

Mayor Roque's administration. For example, Lopez certified that

there was a hit list, and people who were on the hit list were

being retaliated against for political reasons. That testimony

supports plaintiff's independent testimony that she also was aware

of the hit list and that she was on the list. Putting those

 16 A-1251-15T3
statements together creates an issue of material fact concerning

the motive for plaintiff's firing.

 Defendants also argue that no evidence demonstrates that the

Mayor was aware of plaintiff or her political activities. A

problem with that argument is that the Mayor selectively asserted

his Fifth Amendment privilege against self-incrimination. When a

party in a civil action asserts his or her Fifth Amendment

privilege against self-incrimination, the court can instruct the

jury that they may draw an adverse inference. See, e.g., Mahne

v. Mahne, 66 N.J. 53, 60-62 (1974) (recognizing that an adverse

inference may be drawn from a party's invocation of the Fifth

Amendment in civil matters), certif. denied, 75 N.J. 22 (1977);

Duratron Corp. v. Republic Stuyvesant Corp., 95 N.J. Super. 527,

533 (App. Div.) (noting that the adverse inference drawn from a

civil party's invocation of the Fifth Amendment is "a logical,

traditional, and valuable tool in the process of fair

adjudication"), certif. denied, 50 N.J. 404 (1967).

 In the record developed here, there were grounds for drawing

adverse inferences against Mayor Roque. For example, Mayor Roque

denied any involvement in personnel decisions at the BOE. The

OFAC report reached the opposite conclusion. Thus, his refusal

to respond to questions about the OFAC report created an adverse

 17 A-1251-15T3
inference that Mayor Roque was involved in such BOE decisions. On

summary judgment, plaintiff was entitled to such an inference.

 Defendants vigorously argue that the OFAC report was not

admissible. The trial court agreed with that position. We hold,

however, that that ruling was premature on a summary judgment

record. The report, in and of itself, may not be admissible as a

public record, but plaintiff had the right to call witnesses who

are referenced in the report and try to develop the positions

detailed in the report. Moreover, and independently, when Mayor

Roque asserted his Fifth Amendment privilege and refused to answer

questions about the report, those answers were admissible on a

summary judgment record and were subject to an adverse inference.

For example, his denial of involvement in BOE personnel decisions

would be subject to an adverse inference since he refused to answer

questions about the report, which reached the opposite conclusion.

 Thus, on the summary judgment record, plaintiff established

a prima facie showing of political retaliation. The BOE then

responded with the certification of Fauta, who contended that

plaintiff was fired for budgetary reasons and because she requested

an adjustment in her work schedule. Plaintiff, however, submitted

sufficient evidence to create material factual disputes concerning

the reasons for her firing.

 18 A-1251-15T3
 Both in her own testimony and in the certification of Cannano,

plaintiff disputes that budgetary reasons existed for her

termination. Plaintiff also testified that her request for an

accommodation in her work schedule had been approved by her

immediate supervisor and that other people received similar

accommodations. Cannano certified that despite meeting with Fauta

about budgetary matters during the time preceding plaintiff's

termination, he was not aware of any budget crisis. He went on

to certify that while he was employed by the BOE, he was not aware

of any secretary in the business office being fired for budgetary

reasons. He also disputed Fauta's claim that plaintiff was not

replaced. Thus, the conflicting certifications among Fauta,

plaintiff, and Cannano create disputed issues of material fact

concerning whether the BOE's recently stated reasons for

plaintiff's termination are pretextual.

 In summary, when the record is reviewed under the summary

judgment standard, and all inferences are drawn in favor of

plaintiff, disputed issues of material fact exist concerning

whether plaintiff's political activities were a substantial or

motivating factor in the BOE's decision to fire her.

 19 A-1251-15T3
 B. The Order Denying Plaintiff's Motion to Strike Mayor
 Roque's Answer

 The October 9, 2015 order denying plaintiff's motion to strike

Mayor Roque's answer was based on the motion being "moot" because

the court granted summary judgment to defendants. Given that we

have now reversed the orders granting summary judgment to

defendants, plaintiff's motion is no longer moot. Accordingly,

we remand that issue to the trial court for further consideration.

 When a civil defendant fails to submit to pretrial discovery,

courts have a range of sanctions that can be imposed. Mahne,

supra, 66 N.J. at 61. While a civil defendant may invoke his or

her Fifth Amendment privilege to avoid self-incrimination, the

court is permitted to draw adverse inferences from such invocation.

Id. at 60 (citing Duratron, supra, 95 N.J. Super. at 533).

Accordingly, on remand, the court should consider whether to strike

Mayor Roque's answer or impose a lesser sanction such as allowing

adverse inferences to be drawn against the Mayor.

 Defendants note that "adverse inferences may only be drawn

if there is other evidence supporting an adverse finding; it must

not alone constitute the evidence of guilt." State Dep't. of Law

& Pub. Safety, Div. of Gaming Enf't v. Merlino, 216 N.J. Super.

579, 587-88 (App. Div. 1987), aff’d, 109 N.J. 134 (1988). Here,

 20 A-1251-15T3
plaintiff has already developed evidence, independent of an

adverse inference, to support her claim of political retaliation.

 C. The Order Granting a Protective Order over the
 Deposition of Mayor Roque

 Before his deposition, Mayor Roque moved for a protective

order. Initially, the court denied that motion. When the Mayor

sought a stay so that he could file leave to appeal, the trial

court sua sponte reconsidered and granted the protective order.

In doing so, the court reasoned that public dissemination of the

Mayor's deposition would cause embarrassment, and that plaintiff's

intent was to try the case in the media or taint the jury pool in

her favor.

 Under Rule 4:10-3, a court may enter a protective order, upon

a showing of good cause and as justice requires, to prevent

"annoyance, embarrassment, oppression, or undue burden or

expense." However, "[b]road allegations of harm, unsubstantiated

by specific examples or articulated reasoning," do not establish

good cause. Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121

(3d Cir. 1986). Assuring freedom of communication on matters

relating to government is essential in a democracy. Therefore,

protective orders that have a chilling effect upon that purpose

should be used sparingly. Lederman v. Prudential Life Ins. Co.

 21 A-1251-15T3
of Am., Inc., 385 N.J. Super. 307, 323 (App. Div.), certif. denied,

188 N.J. 353 (2006).

 Here, we hold that the trial court failed to articulate

sufficient reasons to justify its broad protective order.

Accordingly, we remand this issue to the trial court for further

consideration. We direct the court to provide greater explanation

of Roque's need for a protective order in light of the heightened

public interest in matters involving government officials. On

remand, the court should also consider any change in circumstances,

including whether there is a pending criminal action or

investigation against the Mayor concerning his involvement in BOE

employment decisions.

 D. The Order Denying Plaintiff's Motion to Compel the
 Deposition of Clara Herrera

 Trial courts have broad discretion in determining the scope

and timing of discovery. Mernick v. McCutchen, 442 N.J. Super.

196, 199-200 (App. Div. 2015). Here, however, it is not clear

that the court considered all of the timing issues relevant to the

request to take the deposition of Clara Herrera. It is

indisputable that Herrera is a material witness, whose identity

was known to the defendants during discovery. While discovery was

open, plaintiff served a notice calling for Herrera's deposition

to take place before discovery closed. Due to the vacation of the

 22 A-1251-15T3
BOE's attorney, however, the deposition did not take place before

the close of discovery.

 Plaintiff then moved to compel Herrera's deposition. The

trial court did not hold oral argument on that motion. The only

explanation for its decision was two sentences typed at the bottom

of the July 10, 2015 order. Those sentences read:

 This application is denied. The [discovery end
 date] that was extended by this court's April
 24, 2015 order to require all depositions of
 any party and any fact witnesses to July 2,
 2015, has expired and no motion to extend the
 [discovery end date] has been filed.

 We cannot ascertain whether the court considered that

plaintiff requested the deposition while discovery was still open

and that the deposition was postponed beyond the discovery end

date because defense counsel was on vacation. Therefore, we remand

this issue so that the court can consider those facts. If the

court denies plaintiff's request to depose Herrera, it must explain

its reasons for that denial in sufficient detail that would allow

appropriate appellate review. See R. 1:7-4; see also Ronan v.

Adely, 182 N.J. 103, 110-11 (2004) (emphasizing the importance of

trial courts making clear findings of fact in determining issues).

 In summary, we reverse the September 18, 2015 orders granting

summary judgment to defendants. We remand for further

consideration the October 9, 2015 orders denying plaintiff's

 23 A-1251-15T3
motion to strike Mayor Roque's answer, the September 21, 2015

order granting a protective order over the deposition of Mayor

Roque, and the July 10, 2015 order denying plaintiff's motion to

compel the deposition of Clara Herrera.

 Reversed in part, and remanded in part. We do not retain

jurisdiction.

 24 A-1251-15T3